FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 30, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

CHEREE COLLETTE COMBS,

        Plaintiff,

    vs.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

No. 4:17-cv-05016-MKD

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

ECF Nos. 15, 16

      BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 16. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 15) and grants Defendant's motion (ECF No. 16).

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ORDER - 2

ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

ORDER - 3

gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff protectively filed an application for Title XVI supplemental security income benefits on March 27, 2013, alleging a disability onset date of November 21, 2011. Tr. 280-89. The application was denied initially, Tr. 155-58, and on reconsideration, Tr. 161-72. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on September 4, 2014, Tr. 43-74, and again on July 17, 2015. Tr. 75-123. On January 19, 2016, the ALJ denied Plaintiff's claim. Tr. 18-33.

At step one of the sequential evaluation analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 27, 2013. Tr. 20. At step two, the ALJ found Plaintiff has the following severe impairments: obesity, gastro esophageal reflux disease (GERD), irritable bowel syndrome (IBS), delayed sleep disorder, headaches, and fibromyalgia versus pain disorder. Tr. 20. At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 25. The ALJ then concluded Plaintiff has the RFC to perform light work with the following limitations:

The claimant can occasionally balance, stoop, kneel, and crouch, and cannot crawl or climb ramps, stairs, ladders, ropes, or scaffolds, and must avoid concentrated exposure to extreme cold, to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation, and to hazards.

Tr. 25-26.

At step four, the ALJ found Plaintiff is able to perform past relevant work as a social services aide. Tr. 31. Alternatively, at step five, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as cashier II, fast food worker, production assembler, telephone quotation clerk, assembler, and hand bander. Tr. 32. Thus, the ALJ concluded Plaintiff has not been under a disability since March 27, 2013. Tr. 33. On January 3, 2017, the Appeals Council denied review of the ALJ's decision, Tr. 1-4, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly identified all of Plaintiff's severe impairments at step two;

2. Whether the ALJ properly evaluated the medical opinion evidence; and

ORDER - 7

3.     Whether the ALJ's findings at steps four and five are supported by substantial evidence.

ECF No. 15 at 6-20.

## DISCUSSION

### A. Step Two

Plaintiff contends that the ALJ improperly failed to identify Plaintiff's mental impairments as severe impairments at step two.  ECF No. 15 at 8-9.

At step two of the sequential process, the ALJ must determine whether claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).  To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. § 416.908 (2010).[1]

An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities

_____

[1] As of March 27, 2017, 20 C.F.R. § 416.908 was removed and reserved and 20 C.F.R. § 416.921 was revised.  The Court applies the version that was in effect at the time of the ALJ's decision.

ORDER - 8

which would have no more than a minimal effect on an individual's ability to work…." S.S.R. 85-28 at *3. Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities; which include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(a) (2010);[2] S.S.R. 85-28.

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

_____

[2] The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987). As of March 27, 2017, 20 C.F.R. §§ 416.921 and 416.922 were amended. The Court applies the version that was in effect at the time of the ALJ's decision.

ORDER - 9

Here, the ALJ considered Plaintiff's mental impairments at step two. Tr. 21-24. The ALJ considered the medical evidence and found that observations from Plaintiff's medical providers did not show severely limiting mental health symptoms, that Plaintiff's performance on objective examinations was inconsistent with severely limiting mental health symptoms, and that Plaintiff's minimal mental health treatment was inconsistent with the level of impairment she alleged. Tr. 21-22. The ALJ also considered the medical opinions of Dr. Haney, Dr. Kraft, and Dr. Scholtz, and, as discussed *infra*, properly discredited their opinions.[3] Tr. 22-23. The ALJ then considered the Paragraph B criteria, *see* 20 C.F.R., Part 404, Subpart P, Appendix I, and concluded that Plaintiff had only mild restrictions in activities of daily living, social functioning, and concentration, persistence, or pace, and no episodes of decompensation. Tr. 24. Based on this analysis, the ALJ concluded Plaintiff had the medically determinable impairments of affective disorder and/or anxiety disorder, but concluded that these impairments did not

_____

[3] Dr. Ortolano also opined Plaintiff was limited by depression. Tr. 823. Although the ALJ did not discuss Dr. Ortolano's opinion at step two, Dr. Ortolano's opinion does not change the step two analysis because the ALJ properly rejected Dr. Ortolano's opinion. *See infra*.

cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, and were therefore not severe impairments.  Tr. 23.

Plaintiff challenges the ALJ's conclusion by citing evidence in the record that shows Plaintiff had mental health impairments.  ECF No. 15 at 8-9; *see, e.g.,* Tr. 555 (initial diagnosis: consider major depressive disorder);[4] Tr. 633 (diagnosis: adjustment disorder with mixed anxiety and depressed mood); Tr. 724, 737 (elevated PHQ-9 and GAD-7 scores); Tr. 828 (diagnosis: major depression); Tr. 679, 736, 838 (Plaintiff observed as depressed).  However, "[t]he mere diagnosis of an impairment … is not sufficient to sustain a finding of disability."  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).  A severe impairment is one that significantly limits a claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).  Although Plaintiff challenges the ALJ's conclusion, Plaintiff fails to show her mental health diagnoses had more than a minimal effect on her ability to work.  As discussed *infra*, the only medical providers who opined mental functional impairments were properly discredited by the ALJ.  Additionally, Plaintiff failed to challenge the ALJ's credibility determination of Plaintiff's symptom complaints.  ECF No. 15 at 6-20.  The ALJ's

_____

[4] Plaintiff inaccurately characterizes this as a diagnosis of major depressive disorder.  ECF No. 15 at 8, 16.

ORDER - 11

conclusion that Plaintiff's mental health impairments were not severe impairments is supported by substantial evidence.

Furthermore, even if the ALJ should have determined that Plaintiff's mental impairments were severe impairments, any error would be harmless because step two was resolved in Plaintiff's favor. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Plaintiff makes no showing that any of the conditions mentioned created limitations that should be accounted for in the RFC. *See Shinseki*, 556 U.S. at 409-10 (the party challenging the ALJ's decision bears the burden of showing harm). Thus, the ALJ's step two finding is legally sufficient.

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's consideration of the medical opinions of Shannon Dramis, D.O.; Marlon Balauag, M.D.; Alex Ortolano, M.D.; Brendon Scholtz, Ph.D.; Steven Haney, M.D.; and Patricia Kraft, Ph.D. ECF No. 15 at 9-17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-831 (9th Cir. 1995)).

    1.  *Shannon Dramis, D.O.*

Dr. Dramis began treating Plaintiff in 2010, and opined on August 4, 2015, and September 28, 2015, that due to migraines and fibromyalgia Plaintiff had to lie

ORDER - 13

down for up to three hours per day and that Plaintiff would miss four or more days of work per month. Tr. 939-42. The ALJ gave little weight to Dr. Dramis' opinion. Tr. 29. Because Dr. Dramis' opinions were contradicted by Dr. Koukol, Tr. 149-50, and Dr. Alexander, Tr. 93-94, the ALJ was required to provide specific and legitimate reasons for rejecting the opinions. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Dramis' opinions were inconsistent with physical examination findings. Tr. 30. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). However, "[i]n evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods." *Revels v. Berryhill*, 874 F.3d 648, 662 (9th Cir. 2017). Fibromyalgia "is diagnosed 'entirely on the basis of patients' reports of pain and other symptoms,' and 'there are no laboratory test to confirm the diagnosis.'" *Id.* at 666 (citing *Benecke v. Barnhart*, 379 F.3d

587, 590 (9th Cir. 2004)).  "[T]he symptoms of fibromyalgia 'wax and wane,' and a person may have 'bad days and good days.'"  *Id.*

Although it is unclear whether the ALJ refers specifically to Dr. Dramis' own examinations of Plaintiff or the physical examinations reflected in the record as a whole, the record supports both.  Dr. Dramis' physical examination findings yielded generally normal results.  Tr. 482-95, 845-48, 860-921.  Other physical examinations in the record yield similar findings, including normal range of motion and muscle strength.  *See, e.g.,* Tr. 458, 463, 468, 548-41.  The ALJ also noted that objective imaging failed to corroborate severe pain.  Tr. 27.  However, fibromyalgia is a disease that eludes objective measurement.  *Benecke*, 379 F.3d at 594.  "[A] person with fibromyalgia may have 'muscle strength, sensory functions, and reflexes [that] are normal.'"  *Revels*, 874 F.3d at 663.  Normal objective examination results can be "perfectly consistent with debilitating fibromyalgia."  *Id.* at 666.  The ALJ failed to consider the unique nature of fibromyalgia in evaluating the physical examination evidence.  *Id.* at 662.

The ALJ noted that Dr. Dramis failed to conduct a tender point examination.  Tr. 30.  However, the ALJ failed to consider the tender point evidence in the record.  "[T]ender-point examinations themselves constitute 'objective medical evidence' of fibromyalgia."  *Revels*, 874 F.3d at 663.  Although Dr. Dramis did not perform a fibromyalgia tender point examination, she noted that she was aware

ORDER - 15

other medical providers had done so.  Tr. 940; *see* Tr. 459, 464, 468.  The ALJ

concluded that "apart from fibromyalgia tender points the claimant had normal

physical examinations throughout the relevant period."  Tr. 27.  However, this

observation is not inconsistent with disabling fibromyalgia.  *Revels*, 874 F.3d at

666.

To the extent the ALJ may have erred when he relied on a lack of objective

examination findings without giving significant consideration to the tender point

evidence, any error is harmless.  An error is harmless "where it is inconsequential

to the [ALJ's] ultimate nondisability determination."  *Molina*, 674 F.3d at 1115.

Here, the ALJ gave other specific, legitimate reasons for assigning less weight to

Dr. Dramis' opinion.  *See, e.g., Morgan v. Comm'r of Soc. Sec Admin.*, 169 F.3d

595, 601-02 (9th Cir. 1999).  Therefore, the outcome is the same despite the

improper reasoning.  Errors that do not affect the ultimate result are harmless.  *See*

*Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d

1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health and Human Servs.*, 734 F.2d

1378, 1380 (9th Cir. 1984).

Second, the ALJ found Dr. Dramis' opinions were inconsistent with the

record showing Plaintiff was generally not in distress.  Tr. 30.  An ALJ may

discredit physicians' opinions that are unsupported by the record as a whole.

*Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Dr.

ORDER - 16

Dramis' opined limitations stemmed from Plaintiff's migraine headaches and fibromyalgia pain. Tr. 939-42. "[T]he symptoms of fibromyalgia 'wax and wane,' and a person may have 'bad days and good days.'" *Revels*, 874 F.3d at 666. However, on reviewing the record as a whole, the ALJ observed that Plaintiff's medical providers frequently observed Plaintiff was in no apparent distress. Tr. 30; *see* Tr. 419, 483, 487-88, 647, 650, 664, 677, 681, 719, 721, 756, 783, 788, 817, 845, 846, 848, 860, 864, 868, 872, 875, 878, 880, 883, 887, 890, 891, 894, 896, 901, 905, 908, 910, 912, 914, 918, 920, 924. The ALJ reasonably concluded that Plaintiff would have been more frequently observed to be in distress were her pain as severe and persistent as Dr. Dramis' opinions indicated. Tr. 30. This was a specific and legitimate reason to discredit Dr. Dramis' opinions.

Third, the ALJ found Dr. Dramis' opinions were inconsistent with Plaintiff's daily activities. Tr. 30. An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *Morgan*, 169 F.3d at 601-02. The ALJ observed Plaintiff reported she was able to prepare meals, perform household chores, sell Mary Kay cosmetics, shop at the grocery store, start an early childhood education program, and care for her newborn son. Tr. 28; *see* Tr. 314-25, 482, 922. Although Plaintiff reported additional symptom-based limitations in performing these activities, the ALJ found Plaintiff's symptom complaints were "not entirely credible," and Plaintiff does not challenge this finding. Tr. 26; ECF

No. 15 at 6-20.  The ALJ reasonably concluded Plaintiff's daily activities were inconsistent with the level of limitation Dr. Dramis opined.  Tr. 30.  This was a specific and legitimate reason to discredit Dr. Dramis' opinions.

Fourth, the ALJ found Dr. Dramis' opinions were inconsistent with Plaintiff's failure to follow treatment recommendations.  Tr. 30.  An ALJ may discredit a claimant's symptom complaints if the claimant fails to show good reason for failing to follow treatment recommendations.  *Smolen*, 80 F.3d at 1284.  However, the fact that a claimant fails to follow recommended treatment is not directly relevant to the weight of a medical provider's opinion.  *See* 20 C.F.R. § 416.927(c).  Without further explanation of how Plaintiff's failure to follow treatment recommendations specifically undermined Dr. Dramis' medical opinions, this is not a specific and legitimate reason to discredit Dr. Dramis' opinions.  However, this error is harmless because the ALJ provided other specific and legitimate reasons to discredit Dr. Dramis' opinions.  *See Parra*, 481 F.3d at 747.

Fifth, the ALJ discredited Dr. Dramis' opinions because he concluded she "failed to carefully consider the questions in these forms."  Tr. 30.  The quality of the explanation provided for a medical opinion is relevant to evaluating the medical opinion.  *Lingenfelter*, 504 F.3d at 1042.  The ALJ noted that Dr. Dramis' first report indicated the "first and last date of treatment" was "8/4/15" and failed

to indicate the duration of Plaintiff's limitations in her first report. Tr. 939-40. However, Dr. Dramis' second report indicated the first date of treatment was in 2010. Tr. 941. The ALJ reasonably concluded that these inconsistencies indicated Dr. Dramis did not complete the forms with care. This was a specific and legitimate reason to discredit Dr. Dramis' opinions.

Finally, the ALJ found Dr. Dramis' opinions were based on Plaintiff's subjective symptom complaints. Tr. 30. An ALJ may discredit medical opinions that are based on a properly-discredited Plaintiff's symptom complaints. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan*, 169 F.3d at 602; *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). The ALJ noted Plaintiff inconsistently reported medication side effects, fatigue, and constipation to different medical providers, including Dr. Dramis, which reports Dr. Dramis relied on in formulating her opinions. Tr. 30; *see* Tr. 922-23, 939. Plaintiff argues Plaintiff's inconsistent symptom reporting reflects Plaintiff's evolving symptoms, rather than a lack of credibility. ECF No. 15 at 15. However, in evaluating the credibility of symptom testimony, the ALJ may utilize ordinary techniques of credibility evaluation, including considering prior inconsistent statements. *Smolen,* 80 F.3d at 1284. The ALJ reasonably concluded that Plaintiff's symptom complaints were less credible based on these inconsistent reports.

Additionally, Plaintiff disputes the ALJ's determination that Dr. Dramis relied on Plaintiff's subjective complaints. *Id.* at 15. "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, [this] is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, the ALJ noted Dr. Dramis relied on Plaintiff's reports of fatigue, pain, and constipation, which are symptoms that have to be based on Plaintiff's subjective statements. Tr. 30. This was a specific and legitimate reason to discredit Dr. Dramis' opinions.

### 2. *Marlon Balauag, M.D.*

Dr. Balauag examined Plaintiff on March 1, 2013, and opined Plaintiff's fibromyalgia caused moderate interference with sitting and reaching; marked interference with standing, walking, lifting, carrying, pushing, pulling, stooping, and crouching; that Plaintiff was limited to sedentary work, defined as the ability lift ten pounds maximum, frequently lift or carry lightweight articles, and walk or stand only for brief periods; and that Plaintiff's limitations were expected to persist with treatment for six months. Tr. 820-22. The ALJ gave this opinion little weight. Tr. 30. Because Dr. Balauag's opinions were contradicted by Dr. Koukol, Tr. 149-50, and Dr. Alexander, Tr. 93-94, the ALJ was required to provide specific and legitimate reasons for rejecting the opinions. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Balauag failed to provide any support for his opinions other than a general reference to his treatment notes. Tr. 30. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett*, 340 F.3d at 875. However, "[i]n evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods." *Revels*, 874 F.3d at 662.

Here, Dr. Balauag offers his own treatment notes in support of his opinion. Tr. 821, *see* Tr. 548-52. Dr. Balauag examined Plaintiff once and found mostly normal physical examination results, including normal range of motion examination results. Tr. 551-52. The ALJ concluded that Dr. Balauag's normal physical findings were inconsistent with Dr. Balauag's opinion that Plaintiff is limited to sedentary work. Tr. 30. However, fibromyalgia is a disease that eludes objective measurement. *Benecke*, 379 F.3d at 594. "[A] person with fibromyalgia may have 'muscle strength, sensory functions, and reflexes [that] are normal.'" *Revels*, 874 F.3d at 663. Normal objective examination results can be "perfectly

consistent with debilitating fibromyalgia." *Id.* at 666. That Plaintiff's physical examination, including range of motion testing, showed normal findings was not necessarily inconsistent with disabling fibromyalgia.

Second, the ALJ found Dr. Balauag's opinion was not supported by the record as a whole. Tr. 30. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. The ALJ observed Dr. Balauag's opined limitations stemmed from Plaintiff's fibromyalgia pain. Tr. 30. However, on reviewing the record as a whole, the ALJ observed that Plaintiff's medical providers frequently observed Plaintiff was in no apparent distress, discomfort, or pain. Tr. 30; *see* Tr. 419, 483, 487-88, 647, 650, 664, 677, 681, 719, 721, 756, 783, 788, 817, 845, 846, 848, 860, 864, 868, 872, 875, 878, 880, 883, 887, 890, 891, 894, 896, 901, 905, 908, 910, 912, 914, 918, 920, 924. The ALJ reasonably concluded that Plaintiff would have been more frequently observed to be in distress were her pain as severe as Dr. Balauag's opinion indicated. Tr. 30. This was a specific and legitimate reason to discredit Dr. Balauag's opinion.

Third, the ALJ found Dr. Balauag's opinion was inconsistent with Plaintiff's daily activities. Tr. 30. An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *Morgan*, 169 F.3d at 601-02. The ALJ observed Plaintiff reported she was able to prepare meals, perform household

chores, sell Mary Kay cosmetics, shop at the grocery store, start an early childhood education program, and care for her newborn son. Tr. 28, 30; *see* Tr. 314-25, 482, 922. The ALJ reasonably concluded these activities were inconsistent with a limitation to sedentary work. Tr. 30. This was a specific and legitimate reason to discredit Dr. Balauag's opinion.

Finally, the ALJ found Dr. Balauag's opinion was inconsistent with Plaintiff's failure to follow through with treatment recommendations. The ALJ may discredit a claimant's symptom complaints if the claimant fails to show good reason for failing to follow treatment recommendations. *Smolen*, 80 F.3d at 1284. However, the fact that a claimant fails to follow recommended treatment is not directly relevant to the weight of a medical provider's opinion. *See* 20 C.F.R. § 416.927(c). Without further explanation of how Plaintiff's failure to follow treatment recommendations undermined Dr. Balauag's opinion, this was not a specific and legitimate reason to discredit Dr. Balauag. However, this error is harmless because the ALJ provided several other specific and legitimate reasons to discredit Dr. Balauag's opinions. *See Parra*, 481 F.3d at 747.

Although the ALJ committed some error in his evaluation of Dr. Balauag's opinion, the error is harmless because the ALJ made alternative findings at step five. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Molina*, 674 F.3d at 1115. Dr. Balauag opined

Plaintiff was limited to sedentary work.[5]  Tr. 822.  In the ALJ's alternative finding

at step five, the ALJ identified jobs at the sedentary level that the vocational expert

testified Plaintiff would be capable of performing, including telephone quotation

clerk, assembler, and hand bander.  Tr. 32.  Even if the ALJ had fully credited Dr.

Balauag's opinion and found Plaintiff was limited to sedentary work, the ALJ's

disability determination would remain unchanged.  Tr. 32-33.  Therefore, this error

is harmless and not grounds for reversal.

### 3. Alex Ortolano, M.D.

Dr. Ortolano treated Plaintiff and opined on January 9, 2015, that Plaintiff's

fibromyalgia, depression, and migraines made her unable to stand or sit for

extended periods of time; that Plaintiff was limited to sedentary work, defined as

able to lift ten pounds frequently and sitting, walking, and standing for brief

periods; and that Plaintiff's symptoms would limit her ability to work for twelve

---

[5] Plaintiff notes Dr. Balauag opined additional limitations in handling, pushing, and

pulling that were not incorporated into the ALJ's RFC formulation.  ECF No. 17 at

4.  However, any error in failing to incorporate these limitations into the RFC is

harmless because Dr. Balauag opined these limitations would persist for only six

months, which falls short of the twelve-month durational requirement for Social

Security claims.  Tr. 822; *see* 20 C.F.R. § 416.905.

ORDER - 24

months.  Tr. 823-25.  The ALJ gave this opinion little weight.  Tr. 30.  Because Dr. Ortolano's opinions were contradicted by Dr. Koukol, Tr. 149-50, and Dr. Alexander, Tr. 93-94, the ALJ was required to provide specific and legitimate reasons for rejecting the opinions.  *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Ortolano's opinion was unsupported by objective evidence.  Tr. 30.  Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole.  *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Moreover, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes.  *See Connett*, 340 F.3d at 875.  Here, Dr. Ortolano provided no medical evidence, including treatment notes, or other explanation for the basis of his opinion.  Tr. 823-25.  Furthermore, the record as a whole contains no treatment notes from Dr. Ortolano.  Identifying the lack of supporting evidence was a specific and legitimate reason to discredit Dr. Ortolano's opinion.

Second, the ALJ discredited Dr. Ortolano's opinion because it was based in part on Plaintiff's depression, and the ALJ found no evidence of severe mental impairments at step two.  Tr. 30.  The ALJ must consider all of a claimant's impairments in formulating the RFC, including impairments are not severe.  20 C.F.R. §§ 416.920(e), 416.945.  The ALJ rejected mental health impairments at

step two because he found no credible medical evidence to support a finding of severe impairment, but the ALJ also rejected Dr. Ortolano's opinion regarding depression because the ALJ had already rejected mental health conditions at step two. Tr. 21-22, 30. The ALJ's finding is circular and fails to consider all of Plaintiff's impairments. This is not a specific and legitimate reason to reject the medical opinion. Given the other reasons, supported by substantial evidence, offered by the ALJ, any error is harmless. *See Molina*, 674 F.3d at 1115.

Third, the ALJ found Dr. Ortolano's opinion was internally inconsistent and unexplained. A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Dr. Ortolano noted that due to Plaintiff's pregnancy, Plaintiff was unable to take medications to manage her fibromyalgia, depression, and migraines. Tr. 823. However, Dr. Ortolano also opined Plaintiff's condition would likely limit her ability to work for twelve months. Tr. 824. The ALJ concluded that these findings were inconsistent and questioned why Plaintiff's impairments would not improve after her pregnancy, when she would be able to resume taking medication to manage her symptoms. This was a specific and legitimate reason to discredit Dr. Ortolano's opinion.

Fourth, the ALJ found Dr. Ortolano's opinion was inconsistent with physical examination findings in the record. The ALJ concluded that the normal physical

findings in the record were inconsistent with Dr. Balauag's opinion that Plaintiff is limited to sedentary work. Tr. 30. However, fibromyalgia is a disease that eludes objective measurement. *Benecke*, 379 F.3d at 594. "[A] person with fibromyalgia may have 'muscle strength, sensory functions, and reflexes [that] are normal.'" *Revels*, 874 F.3d at 663. Normal objective examination results can be "perfectly consistent with debilitating fibromyalgia." *Id.* at 666. Plaintiff's normal physical examination findings are not necessarily inconsistent with disabling fibromyalgia. To the extent any error occurred in analyzing the physical examination findings, it is harmless given the other reasons offered by the ALJ. *See Molina*, 674 F.3d at 1115.

Fifth, the ALJ found Dr. Ortolano's opinion was not supported by the record of Plaintiff not appearing in distress. Tr. 30. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. The ALJ observed Dr. Ortolano's opined limitations stemmed from Plaintiff's fibromyalgia pain. Tr. 30. However, in reviewing the record as a whole, the ALJ observed that Plaintiff's medical providers frequently observed Plaintiff was in no apparent distress, discomfort, or pain. Tr. 30; *see* Tr. 419, 483, 487-88, 647, 650, 664, 677, 681, 719, 721, 756, 783, 788, 817, 845, 846, 848, 860, 864, 868, 872, 875, 878, 880, 883, 887, 890, 891, 894, 896, 901, 905, 908, 910, 912, 914, 918, 920, 924. The ALJ reasonably concluded that Plaintiff would have been more

frequently observed to be in distress were her pain as severe as Dr. Ortolano's opinion indicated. Tr. 30. This was a specific and legitimate reason to discredit Dr. Ortolano's opinion.

Sixth, the ALJ found Dr. Ortolano's opinion was inconsistent with Plaintiff's daily activities. An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *Morgan*, 169 F.3d at 601-02. The ALJ observed Plaintiff reported she was able to prepare meals, perform household chores, sell Mary Kay cosmetics, shop at the grocery store, start an early childhood education program, and care for her newborn son. Tr. 28; *see* Tr. 314-25, 482, 922. The ALJ reasonably concluded these activities were inconsistent with a limitation to sedentary work. Tr. 30. This was a specific and legitimate reason to discredit Dr. Ortolano's opinion.

Although the ALJ committed some error in his evaluation of Dr. Ortolano's opinion, the error is harmless. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Molina*, 674 F.3d at 1115. Dr. Ortolano opined Plaintiff was limited to sedentary work. Tr. 822. In the ALJ's alternative finding at step five, the ALJ identified jobs at the sedentary level that the vocational expert testified Plaintiff would be capable of performing, including telephone quotation clerk, assembler, and hand bander. Tr. 32. Even if the ALJ had fully credited Dr. Ortolano's opinion and found Plaintiff was limited to

sedentary work, the ALJ's disability determination would remain unchanged.  Tr. 32-33.

   *4.  Brendon Scholtz, M.D.*

   Dr. Scholtz conducted a consultative examination on June 26, 2013, and opined Plaintiff was significantly impaired by a combination of adjustment disorder and her medical issues, including fibromyalgia; that Plaintiff was unable to maintain full-time employment based on her functional limitations attributable to her physical and psychological distress; that Plaintiff would have little to no trouble understanding, remembering, and carrying out complex instructions; that Plaintiff would have little to no trouble making complex decisions; that Plaintiff's thinking and reasoning ability were not significantly impaired; that Plaintiff was unable to persist for a normal work week; that Plaintiff's prognosis was guarded; and that Plaintiff's impairments would improve significantly or remit within 360 days.  Tr. 630-34.  The ALJ gave Dr. Scholtz's opinions little weight.  Tr. 23. Because these opinions were contradicted by Dr. Haney, Tr. 135-36, and Dr. Kraft, Tr. 151-52, the ALJ was required to provide specific and legitimate reasons for rejecting the opinions.  *Bayliss*, 427 F.3d at 1216.

   First, the ALJ found Dr. Scholtz's opinion was based on Plaintiff's physical symptom complaints, which Dr. Scholtz was not qualified to assess as a psychologist.  Tr. 23.  A medical provider's specialization is a relevant

ORDER - 29

consideration in weighing medical opinion evidence. 20 C.F.R. § 416.927.

Additionally, opinions regarding physical limitations are beyond a psychologist's

scope of expertise. *See Brosnahan v. Barnhart*, 336 F.3d 671, 676 (8th Cir. 2003);

*Bollinger v. Barnhart*, 178 F. App'x 745, 746 n.1 (9th Cir. 2006); *Williams v.

Colvin*, No. 2:14-CV-00213-FVS, 2015 WL 5039911, at *8 (E.D. Wash. Aug. 26,

2015). Dr. Scholtz found Plaintiff was "significantly impaired by the combination

of her Adjustment Disorder and her Medical issues including Fibromyalgia." Tr.

634. The ALJ accurately noted that Plaintiff's physical conditions, including

fibromyalgia, are outside the scope of Dr. Scholtz's expertise. Tr. 23.

Additionally, the ALJ noted Dr. Scholtz did not conduct a physical examination of

Plaintiff. Tr. 23; *see* Tr. 632-33. Dr. Scholtz's opinions about Plaintiff's

functional limitations address both Plaintiff's mental and physical symptoms. This

was a specific and legitimate reason to discredit Dr. Scholtz's opinion.

Second, the ALJ noted that Dr. Scholtz's opinion that Plaintiff is unable to

maintain full time employment is an issue reserved to the Commissioner. Tr. 23.

A statement by a medical source that a claimant is "unable to work" is not a

medical opinion and is not due any special significance. 20 C.F.R. § 416.927(d).

Nevertheless, the ALJ is required to "carefully consider medical source opinions

about any issue, including opinion about issues that are reserved to the

Commissioner." S.S.R. 96-5p at *2. "If the case record contains an opinion from

a medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." *Id.* at *3. Here, although the ALJ rejected this opinion because it was on an issue reserved to the commissioner, the ALJ evaluated the opinion but also identified other reasons for rejecting the opinion discussed *supra*. Tr. 23.

However, any error in the ALJ's evaluation of Dr. Scholtz's opinion is harmless. Dr. Scholtz's opinions were qualified with the limitation that Plaintiff's impairments "would be expected to improve significantly or remit within 360 days." Tr. 634. Therefore, Dr. Scholtz's opined limitations fall short of the twelve-month durational requirement for Social Security claims. S*ee* 20 C.F.R. § 416.905. Even if the ALJ had fully credited Dr. Scholtz's opinion, the ALJ's disability determination would remain unchanged. Tr. 32-33. Therefore, this error is harmless and not grounds for reversal.

### 5. *Steven Haney, M.D. and Patricia Kraft, Ph.D.*

Dr. Haney and Dr. Kraft reviewed the record and both opined Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods; moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest

periods; and that Plaintiff's concentration, persistence, and pace would wax and wane throughout a workday, but she can maintain concentration, persistence, and pace to persist throughout a workweek. Tr. 135-36, 151-52. The ALJ assigned these opinions little weight. Tr. 22. Because Dr. Haney and Dr. Kraft were contradicted by Dr. Scholtz, Tr. 630-34, the ALJ was required to provide specific and legitimate reasons for rejecting their opinions. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found these opinions were inconsistent with the psychiatric observations in the record. Tr. 22. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Here, the ALJ identified several instances in the medical record where Plaintiff's treatment providers made normal psychiatric observations. Tr. 22; *see* Tr. 463 (normal mental status examination, normal mood and affect); Tr. 468 (normal mental status examination, no anxiety or depression symptoms observed); Tr. 556 (no anxiety or depression symptoms observed); Tr. 561 (normal mental status examination); Tr. 724 (normal affect, normal psychiatric observations); Tr. 845 (normal mood, affect, behavior, judgment, and thought content); Tr. 847 (same); Tr. 848 (same); Tr. 899 (normal psychiatric observations); Tr. 924 (appropriate affect and insight intact); Tr. 928 (same); Tr. 932 (appropriate affect and line of thought, insight intact); Tr. 936 (same). The ALJ reasonably concluded that these observations

were inconsistent with the moderate limitations Dr. Haney and Dr. Kraft opined. Tr. 22. This was a specific and legitimate reason to discredit their opinions.

Second, the ALJ found these opinions were inconsistent with Plaintiff's performance on mental status examinations. Tr. 22. An ALJ may discredit a physician's opinions that are unsupported by objective medical findings. *See Batson*, 359 F.3d at 1195 (noting that "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, . . . or by objective medical findings"). The ALJ noted Plaintiff's performance on mental status examinations showed normal findings. Tr. 22; *see* Tr. 463 (normal mental status examination); Tr. 468 (normal mental status examination); Tr. 561 (normal mental status examination); Tr. 632-33 (mostly normal mental status examination with mild impairment in recent memory and fair insight into own condition); Tr. 688 (normal mental status examination); Tr. 724 (normal psychiatric observations) Tr. 845 (normal mood, affect, behavior, judgment, and thought content); Tr. 847 (same); Tr. 848 (same). The ALJ reasonably concluded that this record showed a lack of objective evidence to support Dr. Haney and Dr. Kraft's conclusions. Tr. 22. This was a specific and legitimate reason to discredit their opinions.

Third, the ALJ found these opinions were undercut by Plaintiff's lack of mental health treatment. Tr. 22. An ALJ may discredit a claimant's symptom

complaints if the claimant fails to show good reason for failing to follow treatment recommendations. *Smolen*, 80 F.3d at 1284. However, the fact that a claimant fails to follow recommended treatment is not directly relevant to the weight of a medical provider's opinion. *See* 20 C.F.R. § 416.927(c). Without further explanation of how Plaintiff's failure to seek or pursue treatment specifically undermined the medical opinions of Dr. Haney and Dr. Kraft, this is not a specific and legitimate reason to discredit these opinions. However, this error is harmless because the ALJ provided other specific and legitimate reasons to discredit these opinions. *See Parra*, 481 F.3d at 747.

Finally, the ALJ found these opinions were inconsistent with Plaintiff's daily activities. Tr. 22. An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning. *Morgan*, 169 F.3d at 601-02. The ALJ observed Plaintiff reported she was able to prepare meals, perform household chores, sell Mary Kay cosmetics, shop at the grocery store, start an early childhood education program, and care for her newborn son. Tr. 28; *see* Tr. 314-25, 482, 922. The ALJ reasonably concluded that these activities were inconsistent with Dr. Haney and Dr. Kraft's opinions that Plaintiff's concentration, persistence, and pace would wax and wane with her symptoms. Tr. 22. This was a specific and legitimate reason to discredit these opinions.

**C. Steps Four and Five**

Plaintiff contends the ALJ's step four and step five findings regarding Plaintiff's ability to perform work are not supported by substantial evidence because the testimony from the vocational expert was based on an improper hypothetical. ECF No. 15 at 18-20. The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence. *Id.* Plaintiff's argument assumes the ALJ erred in evaluating the medical evidence. ECF No. 15 at 18-20. For reasons discussed throughout this decision, the ALJ's hypothetical to the vocational expert was based on the evidence and reasonably reflects Plaintiff's limitations.

Plaintiff also contends the ALJ erred at step four by failing to identify the specific demands of Plaintiff's past relevant work and failing to properly compare

the specific demands of Plaintiff's past work and her functional limitations. ECF No. 15 at 19. At step four of the sequential evaluation, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 416.920(f). To make this determination, the ALJ must make the following specific findings of fact: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation. S.S.R. 82-62 at *4 (January 1, 1982). Social Security regulations classify work by physical exertion requirements and skill requirements. 20 C.F.R. §§ 416.967, 416.968.

Here, the ALJ first found Plaintiff had the RFC to perform light work, with exceptions that Plaintiff can occasionally balance, stoop, kneel, and crouch, cannot crawl or climb ramps, stairs, ladders, ropes, or scaffolds, and must avoid concentrated exposure to extreme cold, to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation, and to hazards. Tr. 25-26. Second, based on the testimony of the vocational expert, the ALJ made the finding of fact that Plaintiff's past relevant work as a social services aide was classified as light and skilled under the relevant regulations. Tr. 31; see 20 C.F.R. §§ 416.967(b), 416.968(c). Third, based on the vocational expert's testimony, the ALJ made the finding of fact that Plaintiff's RFC allowed her to perform her past relevant work

ORDER - 36

as a social services aide, both as it was actually performed and as that work is customarily performed in the national economy. Tr. 31. The ALJ's findings were therefore consistent with the requirements of S.S.R. 82-62.[6] The ALJ's findings are supported by substantial evidence and are legally sufficient.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 15) is **DENIED.**

2. Defendant's motion for summary judgment (ECF No. 16) is **GRANTED.** The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE** THE FILE.

_____

[6] Plaintiff's reliance on *Pinto*, wherein the ALJ deviated from the Dictionary of Occupational Titles without explanation and failed to make specific findings of fact about the claimant's abilities, is misplaced. *Pinto v. Massanari*, 249 F.3d 840, 846-47 (9th Cir. 2001). Here, the ALJ made the requisite findings of fact with sufficient specificity for the Court to review.

ORDER - 37

1    DATED March 30, 2018.

2                        _s/Mary K. Dimke_
                         MARY K. DIMKE
3            UNITED STATES MAGISTRATE JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER - 38